IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID W. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 14-453 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| ERGON WEST VIRGINIA, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

**I.   MEMORANDUM**

For the reasons that follow, Ergon West Virginia, Inc.'s ("Defendant's") Motion to

Dismiss and to Compel Arbitration, or Transfer Venue (**Doc. 33**) will be GRANTED IN PART

and DENIED IN PART.

**BACKGROUND**

David W. Johnson ("Plaintiff") alleges that he worked for Defendant from approximately

January, 2001, until February, 2014, classified as an independent contractor.  Second Am.

Compl. (Doc. 29) at ¶¶ 8, 12.  He alleges that during this time he was under the control of

Defendant in all material respects, and therefore was in fact an "employee."  Id. at ¶¶ 12, 14.

Plaintiff alleges that due to this misclassification, he is owed overtime at time and one half of his

regular rate of pay for any hours worked in excess of 40 in a given work week under the Fair

Labor Standards Act ("FLSA").[1]  Id. at ¶¶ 22, 37.

---

[1] Plaintiff also seeks liquidated damages, attorney's fees, and costs for any violations of FLSA.
Compl. at ¶ 39.

Plaintiff further alleges that Defendant discriminated against him on the basis of age, in violation of the Age Discrimination in Employment Act ("ADEA"). Id. at ¶ 40. He alleges that in February of 2014, he was told that although there was no problem with his work, his services were no longer needed as his responsibilities were going to be handled "on the corporate level." Id. at ¶¶ 41-43. In March of 2014, Plaintiff learned that Defendant had posted an open position for Plaintiff's previous job (Project Engineer), to be classified as an Ergon West Virginia employee. Id. at ¶ 44-45. After applying for this position, Plaintiff filed a charge for age discrimination with the Equal Employment Opportunity Commission ("EEOC"); thereafter Plaintiff's attorney advised Defendant that he had filed said charge and that he was additionally seeking compensation for unpaid overtime. Id. at ¶¶ 45-47. Defendant then informed Plaintiff that his application for Project Engineer had been rejected. Id. at ¶ 48. Plaintiff alleges that Defendant proceeded to hire a significantly younger applicant, with much less experience, as Project Engineer. Id. at ¶ 49. He alleges, in part, that Defendant discriminated against him on the basis of age both with respect to his February, 2014 termination and with respect to the rejection of his March, 2014 application for re-hire. Id. at ¶ 50.

Plaintiff brings the instant suit alleging failure to pay overtime wages, in violation of the FLSA (Count I); retaliation for seeking overtime wages, in violation of the FLSA (Count II); age discrimination in violation of the ADEA (Count III); retaliation for asserting an age discrimination claim with the EEOC, in violation of the ADEA (Count IV); breach of contract, specifically breach of one or more Master Service Contracts regarding Plaintiff's work for Defendant (Count V); and declaratory judgment establishing that Defendant breached the Master Service Contract (the "Contract") and therefore is barred from enforcing its arbitration provision (Count VI). Id. at ¶¶ 54-114.

Defendant filed a Renewed Motion to Dismiss or Stay Proceedings Pending Completion of Arbitration, or Alternatively, to Dismiss or Transfer Venue ("Motion to Dismiss").  Def.'s Mot. (Doc. 33).  The parties' arguments will be addressed in turn.

## ANALYSIS

### Motion to Compel Arbitration

Defendant moves the Court to compel arbitration.  Def.'s Mot.  Before compelling arbitration pursuant to the Federal Arbitration Act ("FAA"), a court must determine that: "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement."  Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009).  When determining whether a valid agreement to arbitrate exists, a court looks to the "ordinary state-law principles that govern the formation of contracts."[2]  Id. (internal citations omitted).

The Third Circuit recently clarified which standard trial courts should use when considering motions to compel arbitration.  Guidotti v. Legal Helpers Debt Resolution, L.L.C.,716 F.3d 764 (3d Cir. 2013).  The court held that:

> when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.  But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question.

Id. at 774 (internal citations omitted).  The court further explained that when a "restricted inquiry into factual issues [is] necessary" Rule 56's summary judgment standard applies, to ensure that

---

[2] Both parties agree that Mississippi state law governs interpretation of the Master Service Contract.  Def.'s Br. in Support at 9; Pl.'s Br. in Opp'n (Doc. 38) at 1.

"arbitration is awarded only if there is an express, unequivocal agreement to that effect."  Id. at

774-75.

      Defendant argues that Plaintiff's claims are subject to the arbitration clause in the

Contract signed by Defendant and Plaintiff, which directs, in relevant part, that:

> [a]ll disputes, controversies or claims, of whatever kind or character, arising out
> of or in connection with this agreement shall be settled and determined by binding
> arbitration in accordance with the Commercial Arbitration Rules of the American
> Arbitration Association (the "Rules").

Def.'s Mot. at Ex. A; Def.'s Br. in Support at 3.  Although not attached to the Second Amended

Complaint (the "Complaint"), the Contract is a document relied upon in said Complaint –

submitted by Defendant as an exhibit to the Motion to Dismiss – and thus it will be considered

by the Court.  Guidotti at 776; Def.'s Mot. at Ex. A.

      Defendant argues that the Contract's arbitration provision is valid, and that Plaintiff's

claims fall under its broad umbrella.  Def.'s Br. in Support at 9-14.  Plaintiff does not dispute that

the Contract was validly formed,[3] and thus the first requirement is met.  Kirleis, 560 F.3d at 160

(requiring that a court first determine that a valid agreement to arbitrate exists).  Plaintiff argues

that Defendant's motion fails on the second prong of the test, asserting that some of his claims

fall outside the scope of the arbitration provision, and thus should not be subject to a motion to

compel arbitration.  Pl.'s Br. in Opp'n at 18-21.

**Scope of the Arbitration Provision**

      As stated *supra*, Plaintiff brings a six-count Complaint against Defendant.  Plaintiff does

not contest that Counts V and VI, for breach of contract and declaratory judgment regarding the

Contract's arbitration provision, fall within the scope of the Contract's arbitration clause.

---

[3] Plaintiff does assert that the Contract and arbitration provision are revocable.  The Court
addresses those arguments *infra*.

Plaintiff asserts that his "retaliation claims," presumably Counts II and IV, fall outside the scope of the arbitration clause.  Count II alleges that Defendant retaliated against Plaintiff after he asserted a right to overtime wages, in violation of the Fair Labor Standards Act.  Compl. at ¶¶ 64-68.  Count IV alleges that Defendant retaliated against Plaintiff after he filed a charge of age discrimination with the EEOC, in violation of the Age Discrimination in Employment Act. Id. at ¶¶ 81-86.  Plaintiff also asserts that his claim for unpaid overtime in violation of the FLSA (Count I), and his claim for wrongful termination subject to the ADEA (Count III) are beyond the scope of the arbitration clause.  Pl.'s Br. in Opp'n at 20-21.  As neither party questions the propriety of a district court's determination of whether the dispute is arbitrable, we assume, without further analysis, that the Contract leaves the question of arbitrability to judicial determination.  See CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165 (3d Cir. 2014) (citing Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287 (2010)).

"[W]here a written agreement evidences an intent on the part of the contracting parties to arbitrate the dispute in question, a court must compel the parties to arbitrate that dispute."  Id. at 172 (citing Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 626 (1985)).  However, parties are free to structure their arbitration agreements to their liking, and an intent to arbitrate certain disputes does not necessarily indicate an intent to arbitrate all disputes. Id. (citing Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 458 (2003) (Rehnquist, J., dissenting), (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989))).  "Ultimately, then, whether a dispute falls within the scope of an arbitration clause depends upon the relationship between (1) the breadth of the arbitration clause, and (2) the nature of the given claim."  Id. Any doubts as to whether a certain dispute falls within the scope of an arbitration clause shall be resolved in favor of arbitration.  Mitsubishi Motors Corp. v. Soler

Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.") (quoting Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983)).

When determining whether certain disputes or claims fall within the scope of a given arbitration clause, courts consider "the factual underpinnings of the claim rather than the legal theory alleged in the complaint."  Medtronic Ave, Inc. v. Advanced Cardiovascular Systems, Inc., 247 F.3d 44, 55 (2001) (internal citations omitted).  We first carefully consider the contractual language which, in the instant case, is as follows:

> [a]ll disputes, controversies or claims, of whatever kind or character, arising out of or in connection with this agreement shall be settled and determined by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the 'Rules').  Said arbitration shall be conducted by three (3) arbitrators unless Company and Contractor mutually agree that the nature of the dispute requires only one (1) arbitrator and are able to agree on the identity of the same.  Company and Contractor shall each be entitled to nominate one arbitrator in accordance with the Rules.  The two (2) arbitrators so nominated shall nominate the third arbitrator within ten (10) days of confirmation of the first two (2) arbitrators.  The arbitration shall be governed by Mississippi law and shall be carried out in the City of Jackson, Mississippi, U.S.A. or such other location as the parties may agree.   Company and Contractor shall share equally all administrative fees and expenses related to the Arbitration, including any arbitrator's fees.  The award of the arbitrator(s) shall be enforceable in a court of competent jurisdiction.

Def.'s Mot. at Ex. A.  It is uncontested that the "all disputes, controversies or claims, of whatever kind or character, *arising out of or in connection with* this agreement" language used by the parties is broad.  Id. (emphasis added); see Griswold v. Coventry First LLC, 762 F.3d 264, 270-71 n. 5 (3d Cir. 2014) (citing Battaglia v. McKendry, 233 F.3d 720, 727 (3d Cir. 2000) ("[W]hen

6

phrases such as ... 'arising out of' appear in arbitration provisions, they are normally given broad construction.")).

Plaintiff asserts that  his retaliation claims – Counts II and IV – "arise from conduct that occurred after Ergon-West Virginia terminated the Master Service Contract," and thus they are subject to mandatory arbitration "'only if they involve rights which accrued or vested under the'" Contract.  Pl.'s Br. in Opp'n at 18 (quoting Litton Fin. Printing Dev. v. N.L.R.B., 501 U.S. 190, 209 (1991).  According to the Complaint, Plaintiff was terminated, ending his contractual relationship with Defendant pursuant to the Master Service Contract, on or about February of 2014.  Compl. at ¶ 41.  In or about early March, Plaintiff learned that Defendant posted an open position for a Project Engineer, and he applied for the job.  Id. at ¶¶ 44-45.  On or about March 19, 2014, Plaintiff filed a charge for age discrimination with the EEOC, and, through counsel, informed Defendant that he had done so and that he also "had a claim for unpaid overtime."  Id. at ¶ 47.  On or about March 21, 2014, Plaintiff was informed via email that his application for the posted position of Project Engineer had been rejected.  Id. at ¶ 48.

Defendant argues that Varallo v. Elkins Park Hosp., 63 Fed.Appx. 601 (3d Cir. 2003) makes clear that the Court should compel arbitration of Plaintiff's retaliation claims.  Def.'s Reply at 2-3.  In Varallo, the plaintiff was employed by the defendants (the "Hospital"), when she took Family and Medical Leave following the birth of her child.  Id. at 602-3.  After she took said leave, her position was eliminated and the Hospital failed to rehire her into another position. Id.  Varallo sued for failure to rehire and wrongful termination.  Id.  Varallo's employment with the Hospital was governed by a valid Employee Acknowledgment Form, which obligated her "to submit to final and binding arbitration any and all claims and disputes that are related in any way to [her] employment or the termination of [her] employment with Tenet."  Id. at 602, n. 1.  The

District Court held that Varallo's failure to rehire claim was not subject to the binding arbitration provision, as her Employee Acknowledgment Form ceased to apply to actions post-dating her termination.  Id. at 603-4.

The Court of Appeals for the Third Circuit reversed, finding that Varallo had agreed to submit any and all claims that are related "*in any way*" to her employment or the termination thereof.  Id. at 604.  The court reasoned that Varallo's failure to re-hire claim was "inextricably intertwined" with the context of her prior employment and termination, which were covered by the valid arbitration clause.  Id.  As "[i]t would be virtually impossible for her to allege a factual basis for unlawful discrimination in the Hospital's failure to rehire her without invoking events that occurred against the backdrop of and within the context of her employment and its termination," her failure to rehire claim was related "in any way" to her employment and/or termination.  Id. at 604 (noting that "[w]e simply cannot say with the 'positive assurance' that we require before a motion to compel arbitration can be denied that the agreement here 'is not susceptible of an interpretation' that covers the failure to rehire claim") (quoting Medtronic Ave, Inc., 247 F.3d at 55).  Notably, the Court of Appeals for the Third Circuit did not invoke the legal standard set forth in Litton, as it was able to render a determination based solely on the broad wording of the arbitration provision itself.[4]  The Court is persuaded that the facts of the instant case are substantially similar.

---

[4] Litton is distinguishable, as the Supreme Court observed that the collective bargaining agreement at issue made clear that its stipulations "'shall be in effect for the time hereinafter specified,'. . . in other words, until the date of expiration and no longer."  501 U.S. at 205.  That contract, unlike the Contract at issue here, set forth a clear moment for the termination of the applicability of its provisions, including the arbitration provision.  The Court went on to establish that *even in certain instances when the contract itself sets forth the termination of the applicability of the arbitration clause,* a post-termination grievance may still be subject to arbitration if certain criteria are established.  Basketball Marketing Co., Inc. v. Urbanworks Entertainment, 2004 WL 2590506, at *4 (E.D. Pa. 2004) (citing Litton, 501 U.S. at 205–206).

In signing the Master Service Contract, Plaintiff manifested an intent that "[a]ll disputes, controversies or claims, *of whatever kind or character*, *arising out of or in connection with*" the Contract, would be subject to mandatory arbitration.  Def.'s Mot. at Ex. A (emphasis added).  Like the plaintiff in Varallo, "[i]t would be virtually impossible for [him] to allege a factual basis for unlawful [retaliation] in [Defendant's] failure to rehire [him] without invoking events that occurred against the backdrop of and within the context of" his previous Contract with and work for Defendant.  Plaintiff asserts that he was retaliated against for actions taken *after* his termination, and thus the Contract's arbitration clause is inapplicable.  Pl.'s Br. in Opp'n at 18-19.  However, the actions that Plaintiff alleges triggered Defendant's retaliation were the filing of an age discrimination claim and the assertion of entitlement to unpaid overtime wages.  Id.  Those two claims are inextricably "connected" with the Contract, as they stem from his work for Defendant.  Like the Court of Appeals for the Third Circuit in Varallo, the Court "simply cannot say with the 'positive assurance' that we require before a motion to compel arbitration can be denied that the agreement here 'is not susceptible of an interpretation' that covers" Plaintiff's retaliation claims at Counts II and IV.  Varallo, 63. Fed.Appx. at 604, (citing Medtronic Ave, Inc., 247 F.3d at 55).  As such, a presumption of arbitrability is triggered, and the Court finds that Counts II and IV fall within the scope of the Contract's arbitration provision.  See Medtronic Ave, Inc., 247 F.3d at 55 (citing United Steelworkers v. Warrior & Gulf Nav. Co, 363 U.S. 574, 582-83 (1960)).

Plaintiff further argues that his claims for unpaid overtime pursuant to the FLSA at Count I, and wrongful termination pursuant to the ADEA at Count III, fall outside the scope of the

---

As the arbitration at issue here, on its face, applies to all claims "arising out of or connected to" the Contract, termination of the Contract notwithstanding, Litton is inapposite.

arbitration provision.   Plaintiff argues that whether or not he was an "employee" or an "independent contractor" turns on the facts of his work situation and not the Contract, and thus the Contract's arbitration clause is inapplicable.  He also asserts that his wrongful termination claim arises out of an "implied-in-fact employment contract" and not the Contract, and thus Count III is also not subject to arbitration provision.  Simply put, these arguments go to the merits of his claims at Counts I and III, and they are red herrings with respect to arbitrability.

It is difficult to dispute that an unpaid overtime and a wrongful termination claim "arise under" or are "connected to" the Contract which governed Plaintiff's work relationship and terms with Defendant.  Whether or not the Contract was accurate with respect to its classification of Plaintiff as an independent contractor rather than an employee, or whether Defendant's basis for terminating the Contract with respect to Plaintiff was lawful, seem to be facially connected to the Contract itself.  The Court finds that Counts I and III fall within the scope of the Contract's arbitration provision as well.

**Enforceability of the Arbitration Provision**

Having found that the arbitration provision is valid and that Plaintiff's claims fall within its scope, the Court will now address Plaintiff's arguments with respect to the revocability of the arbitration provision.  Plaintiff argues that the arbitration clause at issue is revocable, and therefore not valid and enforceable, under two separate theories: 1) Defendant has materially breached the arbitration provision, rendering it revocable under Mississippi law, and 2) Defendant has "unclean hands," establishing grounds in equity for the revocation of the arbitration provision.  Pl.'s Br. in Opp'n at 9-18 (citing 9 U.S.C. § 2, which states that arbitration clauses are enforceable "save upon such grounds as exist at law or equity for the revocation of any contract").

"[A]greements to arbitrate are severable from a larger contract, and may therefore be separately enforced and their validity separately determined. Thus, in order to qualify as a question of arbitrability that [a] court may consider, the challenge must 'relat[e] to the making and performance of the *agreement to arbitrate*.'" Quillon v. Tenet HealthSystem Philadelphia, Inc., 673 F.3d 221, 229 (3d Cir. 2012) (emphasis added) (citing Rent–A–Center, West, Inc. v. Jackson, 561 U.S. 63, 70 (2010); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967)).  It is well established that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."  Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2006).

Plaintiff argues that: 1) the arbitration clause provides that any related arbitration proceedings must be conducted "in accordance with the Commercial Arbitration Rules [the "Rules" or the "AAA Rules"] of the American Arbitration Association"; 2) that Defendant commenced arbitration proceedings in violation of the Rules; and that such a violation constitutes a material breach of the arbitration provision, rendering that provision revocable.[5] Pl.'s Br. in Opp'n at 11-12; Def.'s Mot. at Ex. A, ¶ 14.  Defendant acknowledges that once Plaintiff, through counsel, informed it of an intention to file suit in federal court for claims Defendant understood were "connected to" the Contract, Defendant initiated arbitration proceedings.  Defendant argues that such an initiation did not violate the AAA Rules, and that even if it did, such a violation would not rise to the level of a material breach of the arbitration

---

[5] Plaintiff is unclear at times as to whether he is alleging that Defendant materially breached the Contract as a whole, rendering the entire document revocable, or whether he is asserting that Defendant breached only the arbitration provision, rendering that section of the Contract revocable.  As the Court may only review a challenge to the arbitration provision itself, and Plaintiff does at times clearly state that he is asserting Defendant's material breach of that provision, the Court interprets his argument as being contained to a challenge of that provision alone.  See supra.

11

provision.  Def.'s Reply (Doc. 39) at 1, incorporating by reference[6] Def.'s Br. in Opp'n to Pl.'s Mot. for Prelim. Inj. (Doc. 35) at 7-11.

Under Mississippi law, applicable to this portion of the Court's analysis, a breach is material "when there is a failure to perform a substantial part of contract or one or more of its essential terms or conditions or if there is such a breach as substantially defeats its purpose." UHS-Qualicare, Inc. v. Gulf Coast Community Hosp., Inc., 525 So.2d 746 (Miss. 1987). Plaintiff alleges that the Rules require arbitration proceedings to be commenced by the allegedly aggrieved party, and that Defendant's initiation of arbitration proceedings constitutes a material breach of the arbitration provision.  Pl.'s Br. in Opp'n at 12.  Plaintiff cites no AAA Rule that sets forth any such requirement.  Rather, Plaintiff cites to rules that define the party to initiate proceedings as the "claimant," and the opposing party as the "respondent," but nowhere cites a rule indicating that the claimant must necessarily be the "aggrieved party."  Id.

Even assuming *arguendo* that Defendant's initiation of arbitration proceedings did contravene the AAA Rules, the Court cannot declare that such an action substantially defeats the arbitration provision or one of its essential terms.  See UHS-Qualicare, Inc., 525 So.2d 746.  It appears that the purpose of the arbitration provision is to ensure that the parties settle disputes "arising under or connected to" the Contract in binding arbitration.  It is clear that commencing such arbitration proceedings after being made aware of the existence of such disputes, is consistent with the arbitration provision itself.  Thus, even if Defendant did violate an AAA

---

[6] Because the "Court's rules limit space for [a] Reply," Defendant incorporated arguments previously submitted in opposition to Plaintiff's Motion for a Preliminary Injunction.  This strikes the Court as a mechanism by which Defendant merely circumvented its Practices and Procedures.  In the future, if Defendant requires additional space in order to fully reply to an argument, it is directed to seek the Court's leave to file excess pages rather than direct the Court to track down arguments located in previously submitted papers.

Rule, such a violation does not constitute a material breach, and the arbitration provision is not revocable.

Plaintiff next argues that Defendant comes to the Court with "unclean hands" and thus is not entitled to equitable relief in the form of an Order to Compel Arbitration.  Pl.'s Br. in Opp'n at 16-18.  Plaintiff alleges that Defendant engaged in the following "misconduct":  Defendant filed an arbitration demand on Plaintiff's behalf; in doing so, Defendant "relied on the contents of an e-mail from Mr. Johnson's attorney communicating a confidential settlement demand."  Id. at 16-17.  As both of Plaintiff's arguments pertain to Defendant's alleged unclean hands as they relate to the arbitration provision itself, the Court will consider them.  Quilloin v. Tenet HealthSystem Philadelphia, Inc., 673 F.3d 221, 229 (3d Cir. 2012) (emphasis added) (citing Rent–A–Center, West, Inc. v. Jackson, 561 U.S. 63, 70 (2010); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967)); see also  Bailey v. Bailey, 724 So. 2d 335, 337 (Miss. 1998) (holding that "[t]he clean hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue") (internal citations omitted).

The "unclean hands" doctrine establishes that "he who comes into equity must come with clean hands," Thigpen v. Kennedy, 238 So.2d 744, 746 (Miss. 1970); an Order to Compel Arbitration is a form of equitable relief, and thus Defendant's hands must be clean.   "Any wilful [sic] act concerning the cause of action which can be said to transgress equitable standards of conduct is sufficient to invoke the maxim."  Id. at 747.   Plaintiff argues that Defendant initiated arbitration proceedings, in "willful inequity," in order to "deprive Mr. Johnson of his right to seek and obtain an order from this court declaring that Mr. Johnson's claims fall outside the

scope of the Master Service Contract's arbitration provision.  That is deliberate and improper gamesmanship that should not be tolerated."  Pl.'s Br. in Opp'n at 17.

Contrary to Plaintiff's presentations otherwise, it is clear that despite Defendant's initiation of arbitration proceedings, he *is* able to seek a declaration from a federal court that alleviates his obligation to arbitrate, as evidenced by this very Memorandum and Order.  What is accomplished by Defendant initiating arbitration proceedings is just that: the initiation of arbitration proceedings.  It is not the preclusion of Plaintiff's ability to contest the viability of the arbitration provision in court, as he is doing here.  The Court simply does not see the alleged "willful inequity" in Defendant's actions.  Plaintiff has challenged the arbitration provision here, and this Court has found it to be both valid and applicable.  Defendant's attempt to enforce a seemingly valid and relevant arbitration provision can hardly be said to constitute willful misconduct.  Plaintiff has not established that Defendant has "unclean hands" with respect to the arbitration provision, and thus the Court declines to deem it irrevocable.

**Location of Arbitration**

The Contract directs that arbitration between Plaintiff and Defendant shall be carried out in Jackson, Mississippi.  Def.'s Mot. at Ex. A.  Section 4 of the FAA provides that arbitration, if court-ordered, "shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4.  A Western District of Pennsylvania Court may not compel arbitration outside of the Western District of Pennsylvania.  MidOil USA, LLC v. Astra Finance PTY Ltd., 2012 WL 4794311, *1 (citing Econo-Car International v. Antilles Car Rentals, 499 F.2d 1391, 1394 (3d Cir. 1974)); see also Bosworth v. Ehrenreich, 823 F.Supp. 1175, 1180 (D.N.J. 1993) ("This Court sits in New Jersey and cannot compel arbitration in New York ... Therefore, the Court may not compel arbitration in New York and will not, even if it could,

compel arbitration in New Jersey."); see also Villano v. TD Bank, 2012 WL 3776360 (D.N.J. 2012) (declining to compel arbitration because it was outside District of New Jersey)).  However, Section 4 of the FAA also clarifies that if an arbitration clause is valid and applicable, "the court shall make an order directing the parties to proceed to arbitration in accordance with terms of the agreement."  9 U.S.C. § 4.  Under Section 4 of the FAA, the parties' choice of Mississippi as the forum for arbitration and Plaintiff's petition in the Western District of Pennsylvania leave the Court in a procedural quandary.  See MidOil, 2012 WL 4794311, *1.

   In resolution of this apparent conflict, the Court may either dismiss the instant action so that Defendant may bring an action to compel arbitration in the proper district, or transfer this matter directly to the proper district.  Id. (citing Shaffer v. Graybill, 68 Fed. App'x 374 (3d Cir. 2003) (directing the District Court to dismiss an action or transfer it when an arbitration provision selected New York as the proper forum but one party initiated a federal action outside of that district).  Defendant moves to transfer this case to the Southern District of Mississippi based on the arbitration forum selection clause.  Def.'s Br. in Support at 15-16.  Plaintiff objects, arguing that a "forum selection clause" within an arbitration provision is irrelevant to a court's determination regarding transfer of a court action.  Pl.'s Br. in Opp'n at 21-22. [7]

   The Court has discretion under 28 U.S.C. § 1404(a) to transfer venue for the convenience of parties and witnesses, and in the interests of justice.  In Stewart Organization, Inc. v. Ricoh

---

[7]  In light of the Court's finding that all of Plaintiff's claims are subject to arbitration, there is no reason why a stay would be warranted. FlexiVan Leasing, Inc. v. Through Transport Mut. Ins. Ass'n Ltd., 108 Fed. App'x 35, 38 (3d Cir. 2004) (affirming district court's dismissal of suit where all claims were arbitrable and moving party did not request a stay); Rhodia Inc. v. Bayer Cropscience Inc., 2007 WL 3349453, *5 (D.N.J. Nov. 7, 2007) ("If all the claims in an action are arbitrable, a court may dismiss the action instead of staying it."). Compare Lloyd v. Hovensa, LLC, 369 F.3d 263, 269 (3d Cir. 2004) ("[T]he plain language of § 3 [of the Chapter 1 of the FAA] affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration.") (emphasis added).

Corp, 487 U.S. 22, 29-30, the Supreme Court made clear that a decision to transfer venue

requires:

> the district court to weigh in the balance a number of case-specific factors, and the
> presence of a forum-selection clause will figure centrally in the calculus. . . . [The
> district court may also be required to] address such issues as the convenience of a
> [particular] forum given the parties' expressed preference for that venue, and the
> fairness of transfer in light of the forum-selection clause and the parties' relative
> bargaining power. . . . The district court also must weigh in the balance the
> convenience of the witnesses and those public-interest factors of systemic
> integrity and fairness that, in addition to private concerns, come under the heading
> of "the interest of justice."

See also Wholesale Tape & Supply Co. v. iCode, Inc., 2005 WL 3535148, *8 (E.D. Tenn. 2005).

While a plaintiff's choice of forum should not be lightly disturbed, a forum selection clause – as

a private manifestation of the parties' preferences on venue – weighs heavily in favor of transfer.

See Stewart, 487 U.S. at 35-36 (Scalia, J., dissenting); Optoptics Laboratories Corp. v. Nicholas,

947 F.Supp. 817, 825-26 (D. N.J. 1996).  The Court is not persuaded by Plaintiff's position that a

forum selection clause contained within an arbitration provision is irrelevant, particularly in light

of the Court's finding that said clause is valid and enforceable, and transfer of the case would

facilitate enforcement of the clause consistent with the FAA.  Nor does Plaintiff contend that the

instant suit could not have been brought in the Southern District of Mississippi.  In further

support of a transfer, the Contract specifies that Mississippi law governs its interpretation.  Def.'s

Mot. at Ex. A.

   After weighing all of the § 1404(a) factors, and in the interest of judicial economy, the

Court will transfer this case to the Southern District of Mississippi.  See Optopics, 947 F.Supp.

817 (transferring case to Eastern District of Pennsylvania, as the arbitration provision selected

Philadelphia as the appropriate forum); Sinclair Broadcast Group, Inc. v. Interep Nat. Radio

Sales, Inc., 2005 WL 1000086 (D. Md. 2005) (transferring case to Southern District of New

York, based, in part, on the parties' selection of New York as the arbitration forum).  It would not serve the interests of justice to dismiss this case, forcing Defendant to file a separate suit in the Southern District of Mississippi simply to obtain an Order Compelling Arbitration.  To the contrary, it serves the interests of judicial economy, justice and enforcement of the parties' preferences as stated in the Contract, to transfer the instant matter.  Defendant's Motion to Transfer Venue will be granted.

## II.    **ORDER**

For the reasons stated above, IT IS ORDERED that Defendant's Motion to Dismiss or Stay Proceedings Pending Arbitration (Doc.  33) is DENIED with prejudice.

IT IS FURTHER ORDERED that Defendant's Motion to Transfer Venue (Doc. 33) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to **TRANSFER, FORTHWITH**, this case to the United States District Court for the Southern District of Mississippi.

IT IS SO ORDERED.


September 10, 2015                                          s\Cathy Bissoon_____
                                                           Cathy Bissoon
                                                           United States District Judge

cc (via ECF email notification):

All Counsel of Record